## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Randy W. Helderop, being duly sworn, depose and state as follows:

1.      Your Affiant is a Special Agent (SA) with Homeland Security Investigations (HSI) assigned to the office of the Resident Agent (RA) office in Bismarck, North Dakota.   Your Affiant has been employed by HSI since September of 2004. Your Affiant has a Bachelor of Science degree in Criminal Justice from Boise State University in Boise, Idaho, and has successfully completed the Criminal Investigator Training Program and HSI Special Agent Training at the Federal Law Enforcement Training Center in Glynco, Georgia.

2.      Prior to his employment with HSI, your Affiant was a Special Agent with the United States Department of Health and Human Services, Office of Inspector General, from 2002-2004, and worked in local law enforcement as a deputy sheriff, police officer, and detective from 1995-2002.  Your Affiant is assigned to the North Dakota Internet Crimes Against Children (ICAC) Task Force and has been involved in hundreds of investigations involving the online sexual exploitation of children.  Your Affiant has also instructed on topics related to child sexual exploitation at both local and national conferences.

3.      This affidavit is made in support of an application for a warrant to search two cellular devices which were previously located in the possession of Codi OLSON.  The devices will be further referenced as the "SUSPECT DEVICES" and will be described in detail in Attachment A of this affidavit.

4.      Your Affiant believes the facts and circumstances set forth herein establish probable cause that a crime has been, or is being committed, and that a search of the SUSPECT DEVICES for the items and information detailed in Attachment B will result in the discovery of evidence

which shows or tends to show a crime has been committed or that a particular person has committed a crime.

5.      Your Affiant also submits that there is probable cause to believe that Codi OLSON is committing, or has committed, violations of Title 18 USC 2252(a)(2), Receipt or Attempted Receipt of Images Depicting the Sexual Exploitation of Minors; and 18 USC 2252(a)(4)(B), Possession or Attempted Possession of Images Depicting the Sexual Exploitation of Minors (Further referenced as the SPECIFIED FEDERAL OFFENSES). There is also probable cause to believe that the information sought in Attachment B will produce further evidence of these crimes.

6.      Because this affidavit is being submitted for the limited purposes of applying for a search warrant, your Affiant has not included each and every fact known concerning this investigation. It would be nearly impossible to include all known factual information in this affidavit.  Instead, your Affiant has provided a general overview of the investigation and has set forth only the specific facts necessary to establish probable cause.  Where statements of others are set forth in this affidavit, they are set forth in substance and are not verbatim.  The information contained in this affidavit is based on your Affiant's personal knowledge and information gained through training and experience, in addition to information obtained by other law enforcement agents, witnesses, and documentary evidence to include information provided by Bismarck Police Department Detective Joey Olsen and North Dakota Bureau of Criminal Investigation (NDBCI) Special Agent (SA) Jacob Bratsch.

## PROBABLE CAUSE

7.      In February/March of 2024, the Metro Area Narcotics Task Force (MANTF) initiated an investigation of Codi OLSON in relation to narcotics' trafficking.  Pursuant to the investigation,

Detective Olsen obtained a North Dakota District Court search warrant to search Codi OLSON's residence located at 622 ½ South 16th Street in Bismarck, ND.  The warrant was granted on or about March 14, 2024, and authorized the search and seizure of cellular devices and other items related to the sale of illicit narcotics located at the residence.

8.      On March 18, 2024, the search warrant was executed on the suspect residence.  During the execution of the search warrant, two cellular devices were seized from the home that were later determined to belong to Codi OLSON.  One of those devices was an iPhone 13, with serial number LL4QMQP1QG.  An extraction analysis report was generated for the iPhone 13 on or about March 26, 2024.

9.      On May 24, 2024, SA Bratsch assisted Detective Olsen with the analysis of the extraction from the iPhone 13.  SA Bratsch noted the Apple ID associated with the phone as newcodiolson33@gmail.com and the phone number for the device was identified as (701) 955-2502. Record checks identified the mobile number to be associated with Codi OLSON in law enforcement databases.  While reviewing the extracted data, SA Bratsch located six videos which he believed to be child sexual abuse materials (CSAM).  SA Bratsch provided a description of the videos he had encountered as noted below:

- File Name MD5-4d70c024dd2db2dc6d24d3le9d85846f is a nine (9) second in length video of a male vaginally penetrating an approximate 6–10-year-old nude female with his penis.
- File Name MD5-473512eb5f1fdd59fffacf2096f4362 is a three (3) second in length video of an adult male forcefully raping what appears to be a 12–14-year-old naked female.
- File Name MD5-80ab53479db1ca5b28642ad5ea696f67 is a nine (9) second in length video of what appears to be a 6–8-year-old female, wearing only underwear, performing oral sex on an unknown age male.
- File Name MD5-0385ac7054800bacf6426620c8179965 is a four (4) second in length video of what appears to be an 8–10-year-old female naked masturbating exposing her breasts, vagina, and anus.

- File Name MD5-43eb29f2d07a2de67abc16804485df27 is a nine (9) second in length video of a male using his penis to slap the vagina of what appears to be an infant female.
- File Name MD5-ba1a644f36de5a279693c16fe26b9cfd is a five (5) second in length video of a male using his penis to slap the vagina of what appears to be an infant female.

9.      After locating the files of suspected CSAM, SA Bratsch contacted your Affiant and requested assistance with a federal search warrant for the iPhone 13.  The device and the extraction are currently in SA Bratsch's possession at the NDBCI office in Bismarck located at 1720 Burlington Drive, Suite B (58504).

10.     On May 28, 2024, SA Bratsch obtained a state arrest warrant for Codi OLSON for North Dakota Century Code violations related to the possession of child sexual abuse materials.  On the same date, through further investigative efforts, OLSON was observed driving a gold Chrysler 300 bearing ND license plate 413DWF, south on US Highway 83 towards north Bismarck.  At approximately 1220 Hours, a vehicle stop was initiated by a Bismarck Police Department (BPD) patrol unit on the vehicle OLSON was operating.  OLSON was removed from the vehicle and detained in handcuffs by the patrol officer.  Detective Olsen, SA Bratsch, and your Affiant arrived at the location of the traffic stop and Detective Olsen advised OLSON of his Miranda Warning.  SA Bratsch noted a cellular phone in plain view on the vehicle's center console.  The device was later determined to be an iPhone 11.  The device was seized as evidence and was turned over to Detective Bratsch pending the application for this search warrant.

11.     Following OLSON's detention, OLSON was transported to the Bismarck Police Department where he was interviewed by SA Bratsch and your Affiant.  OLSON told investigators that while researching marijuana information on the social networking application Reddit, he had been sent a link to Telegram, a separate social networking site.  OLSON had followed the link and had been taken to Telegram where he observed numerous files of CSAM.

OLSON stated he had attempted to report the CSAM on several websites with no success. OLSON admitted he had gone back to the same link on several occasions during a week in February in an attempt to report the material.  OLSON stated he did not contact law enforcement to report the CSAM because he was involved in illegal substance abuse.  OLSON stated it was possible he had saved some of the imagery to his phone, or had taken screenshots of the imagery, so that he could report the content.  OLSON also advised investigators he had written a "note" on his phone when he had encountered the material documenting that he had attempted to report the content.  OLSON stated the "note" had synced from his iPhone 13, which was previously seized by law enforcement, to his current device which was the iPhone 11.  OLSON allowed agents to look in his device where he had stored the note which documented when he had encountered the links and the CSAM imagery.  OLSON provided investigators written consent to access his Telegram account and the cloud data associated with his Telegram account through his iPhone 11 to obtain the information associated with the link and the CSAM imagery.  The iPhone 11 seized from OLSON's possession has serial number DX3LT554N72J.  The device is currently located in Detective Bratsch's possession at the NDBCI office in Bismarck.

## CHARACTERISTICS COMMON TO INDIVIDUALS WHO DISTRIBUTE, RECEIVE, POSSESS, AND/OR ACCESS WITH INTENT TO VIEW CHILD SEXUAL ABUSE MATERIALS

12.     Based on your Affiant's previous investigative experience related to child sexual exploitation investigations, and the training and experience of other law enforcement officers with whom your Affiant has had discussions, your Affiant has learned that individuals who view and receive multiple images of child sexual abuse materials are often individuals who have a sexual interest in children and in images of children, and that there are certain characteristics common to such individuals.

13.     Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

14.     Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to attempt to arouse the selected child victim, or to demonstrate the desired sexual acts.

15.     Individuals who have a sexual interest in children or images of children frequently possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for years.

16.     Likewise, individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment, such as a computer and surrounding area. In addition, individuals who have a sexual interest in children or images of children often maintain their collections in cloud storage areas, which can be accessible from any device with internet access and are password protected.

These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the individual to view the collection, which is valued highly.

17.     Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other imagery distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of individuals (email addresses, social networking identifiers or other identifiers) with whom they have been in contact and who share the same interests in child sexual abuse materials.

18.     Individuals who have a sexual interest in children or images of children typically prefer not to be without access to their child sexual abuse materials for any prolonged time-period, whether that be physically or electronically. This behavior has been documented by law enforcement officers involved in the investigation of child sexual abuse materials throughout the world.

19.     Those that receive, possess, and collect child sexual abuse materials typically maintain their collections and materials even if they move physical, geographic locations. A collector and user of child sexual abuse materials who maintains the images and videos in a digital or electronic format, such as on a computer/cell phone, discs, external hard drive, thumb drives, cloud storage, etc., will either take the materials to a new location in the event of a physical move or access them electronically from the new location.

## BACKGROUND REGARDING CHILD SEXUAL ABUSE MATERIALS & COMPUTERS

20.     Based on your Affiant's training, experience, and knowledge, and on conversations your Affiant has had with computer forensic examiners and other investigators, your Affiant knows

the following:

21.    Computers, to include cellular devices, and computer technology have revolutionized the way in which child sexual abuse materials (often referred to as child pornography) are received, produced, distributed, stored, and utilized. It has also revolutionized the way in which child sexual abuse material collectors interact with each other. Child sexual abuse materials were formally produced using cameras and film (either still photography or movies). The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contact, mailings, and telephone calls. Any reimbursement would follow these same paths.

22.    The development of computers has added to the methods used by child sexual abuse materials collectors to interact with and sexually exploit children. Computers serve four functions in connection with child sexual abuse materials. These are production, communication, distribution, and storage.

23.    Individuals involved in the collection of child sexual abuse imagery can now transfer photographs from a camera onto a computer-readable format via numerous methods.  With the advent of digital cameras, the images can now be transferred directly onto a computer. A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Electronic contact can be made to literally millions of computers around the world. The ability to produce child sexual abuse materials easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has

drastically changed the method of distribution and receipt of this illicit imagery. Child sexual abuse materials can be transferred via electronic mail or through a secure file transfer protocol to anyone with access to a computer and modem. Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., "instant messaging"), and easy access to the Internet, electronic devices, such as a cellular phone or a computer, are a preferred method of distribution and receipt of child sexual abuse materials.

24.     The advent of webcams has enabled individuals involved in child sexual abuse materials to broadcast live transmissions of the sexual abuse of minors by connecting the webcam to the Internet. A webcam is a video camera that attaches to a computer or that is built into a laptop or desktop screen. The software included with webcams also permits an individual to capture and save live transmissions to the computer or peripheral storage devices. A webcam can be used in conjunction with an instant messaging service which permits real-time, direct, text-based communication between two or more people while permitting the individuals to view each other real-time via the webcam. However, a webcam is not required in order to receive live transmissions of activity that is taking place in front of another user's webcam.

25.     The computer or cellular device's ability to store images in digital form makes the electronic device itself an ideal repository for child sexual abuse imagery. A single removable flash drive can store thousands of images and thousands of pages of text. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. Hard drives with the capacity of 750 gigabytes are common, and hard drives in excess of one terabyte (1,000 gigabytes) are now readily available for sale from most computer vendors. These drives can store thousands of images at very high resolution. It is possible to use digital cameras and "video" cameras (designed

primarily to record moving images), including those contained in mobile telephones, to upload

images to the Internet, through use of a computer. Only through careful laboratory examination

of electronic storage devices is it possible to recreate the evidence trail generated by this activity.

26.    The Internet and its World Wide Web afford collectors of child sexual abuse materials

several different venues for obtaining, viewing, and trading the illicit imagery in a relatively

secure and anonymous fashion.

27.    Collectors and distributors of child sexual abuse materials also use online resources to

retrieve and store this illicit imagery, including services offered by Internet Portals such as

Yahoo!, Google, iCloud, OneDrive and Dropbox, among others. The online services allow a user

to set up an account with a remote computing service that can provides email services as well as

electronic storage of computer files in any variety of formats. A user can set up an online storage

account from any computer with access to the Internet. Even in cases where online storage is

used; however, evidence of child sexual abuse materials can be found on the user's computer in

most cases.  iPhones offer storage capacities of up to one terabyte of data and include the ability

to store additional data in numerous electronic "cloud" storage databases.

28.    As is the case with most digital technology, communications by way of

computer/cellphone can be saved or stored on the computer used for these purposes. Storing this

information can be intentional, i.e., by saving an email as a file on the computer or saving the

location of one's favorite websites in, for example, "bookmarked" files. Digital information can

also be retained unintentionally, e.g., traces of the path of an electronic communication may be

automatically stored in many places (e.g., temporary files, cache, or ISP client software, among

others). In addition to electronic communications, a user's Internet activities generally leave

traces or "footprints" in the web cache and history files of the browser used. Such information is

often maintained indefinitely until overwritten by other data. For example, computers often indefinitely retain archived conversations from instant messaging programs as well as messaging logs and files shared over instant messaging.

29.    Computer technology, including mobile smart or cell phones, and the Internet have revolutionized the manner in which child sexual abuse materials are produced and distributed. The Internet affords individuals several different venues for meeting each other, obtaining, viewing, and trading child sexual abuse materials in a relatively secure and anonymous fashion.

30.    Computers, including cell phones, serve a multitude of functions in connection with child sexual abuse materials to include, but not limited to: production, communication, distribution, receipt, storage, and social networking. In addition, new technologies are developing allowing average computer users additional avenues to mask their IP addresses for more private Internet browsing sessions.

31.    With digital cameras and cell phones, images of child sexual abuse materials can be transferred directly onto a computer, a tablet, or other digital storage media. A modem allows any computer device to connect to another computer device through the use of telephone, cable, or wireless connection. In addition, some users may set their electronic devices to sync with one another to allow back-up storage of their files should damage or other incidence of loss occur on any of their individual devices. Through the Internet, electronic contact can be made to literally millions of computers around the world using any of their devices.

32.    As with most digital technology, communications made from a computer, smart phone or cell phone are often saved or stored on that device making the device a portable repository by which to store, transport, or distribute child sexual abuse materials. Because of the portability of these devices, an individual has the opportunity to possess said device on their person, at any

time they are outside of their residence.

## CONCLUSION

33.     Based upon the information set forth in this affidavit, your Affiant believes there is

probable cause that, located on the suspect devices is evidence of a crime, contraband, fruits of a

crime, other items illegally possessed, and property designed for use, intended for use, or used in

committing a crime that is in violation of the specified federal offenses. Your Affiant therefore

respectfully request the Court issue a warrant authorizing a search of the devices described in

Attachment A, for the items listed in Attachment B, and authorize the examination and seizure of

any such items found.

34.     This Court has jurisdiction to issue the requested warrant because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) &

(c)(1)(A). Specifically, the Court is a district court of the United States that has jurisdiction over

the offenses being investigated; 18 U.S.C. §§ 2252A(a)(2) and 2252(a)(4)(B).

35.     Your Affiant further requests the Court issue an order sealing, until further order of the

Court, all papers submitted in support of the requested search warrant, including the application,

this affidavit, the attachments, and the requested search warrant. Your Affiant believes that

sealing these documents is necessary because the information to be seized is relevant to an

ongoing investigation, and any disclosure of the information at this time may cause destruction

of or tampering with evidence, or otherwise seriously jeopardize this investigation. Premature

disclosure of the contents of the application, this affidavit, the attachments, and the requested

search warrant may adversely affect the integrity of the investigation.

Respectfully submitted,

RANDALL W HELDEROP
Digitally signed by RANDALL W HELDEROP
Date: 2024.05.30 12:57:10 -05'00'

_____
Randy W. Helderop
Special Agent, Homeland Security Investigations

SWORN AND SUBSCRIBED TO BEFORE ME
THIS 30 DAY OF MAY, 2024.

_____
CLARE R. HOCHHALTER
United States Magistrate Judge